UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
ASHLAND

CIVIL ACTION NO. 06-CV-36-HRW

GREGORY LYNN BROWN										PETITIONER

VS:				**MEMORANDUM OPINION AND ORDER**

BRIAN J. PATTON, Warden										RESPONDENT

\*\*\*\* \*\*\*\* \*\*\*\* \*\*\*\*

Gregory Lynn Brown, an individual presently confined at the Federal Correctional Institution ("FCI") in Ashland, Kentucky, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 and has paid the district court filing fee.

This matter is before the Court for screening. 28 U.S.C. § 2243; *Demjanjuk v. Petrovsky*, 612 F. Supp. 571 (N.D. Ohio 1985) (citing *Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970), *cert. denied*, 400 U.S. 906 (1970); *accord Aubut v. State of Maine*, 431 F.2d 688, 689 (1st Cir. 1970)).

CLAIM

The petitioner alleges that he was denied due process in a prison disciplinary proceeding which resulted in the loss of 27 days of his good conduct time.

FACTUAL ALLEGATIONS

The petitioner has filed a self-styled petition and has attached documents which were exchanged as he challenged the disciplinary conviction administratively. The following is a summary or construction of the allegations contained therein.

On February 14, 2005, in the United States District Court for the Western District of Tennessee, Gregory Lynn Brown was sentenced to 24 months' imprisonment for violating a term

of his supervised release which had been imposed by another court. Four months later, as he was serving the sentence in the FCI-Memphis Satellite Camp in Memphis, Tennessee, he was not where he was supposed to be one evening, and this is the incident giving rise to the instant lawsuit.

On June 12, 2005, at 9 p.m., officials conducted an unannounced count of prisoners and found that Inmate Brown was absent from his housing unit, B-Unit. Fifteen minutes later they conducted a bed-book count, which apparently calls for matching the pictures of inmates to the inmates in the bed to which they are assigned. The petitioner again was found not to be in B-Unit. Prison Camp officials also conducted an internal search and an external search (search of the camp's grounds) without finding Brown.

Finally, however, at 9:40, Brown appeared in B-Unit. A Bureau of Prisons ("BOP") incident report was written, charging the petitioner with "Escape from unescorted community program," identified as a "Code 200" offense. The petitioner admitted that he had not been where he was assigned. He told an investigating officer, "I was out of bounds. I am guilty. I have 9 months to go. I told them not to send me back to the camp. I am guilty." The Unit's Disciplinary Committee referred the matter to a Disciplinary Hearing Officer ("DHO") with the recommendation that if he were found guilty, he should be penalized with a disciplinary transfer, the loss of 42 days good conduct time, one-year loss of visitation, and "30 days P/s."[1]

At the hearing before the DHO, the petitioner did not challenge any aspect of the proceedings; he indicated that he wanted no witnesses or assistance; and according to his DHO report, he purportedly testified, "The report is false. I was in C-Dorm when they were counting B-Dorm. Either way it goes, I go home in a year. I don't care what you do." The other evidence

---

[1] The Court assumes that this means punitive segregation. Whether that is correct or not is not relevant to the Court's disposition herein.

2

before the DHO was in two memoranda, written by the officers conducting the searches and not finding Brown.

The DHO found that the petitioner's excuse that he was in another unit was "not credible" for several reasons. As to the petitioner's contention that he was in C-unit but just not identified there, the DHO wrote, "it is more reasonable to believe that you were not even on Millington Camp Property, as staff conducted two institution counts, and an internal and external search, all of which produced negative results concerning your whereabouts." The DHO found the petitioner guilty of the Code 200 offense, "Escape from an open institution."

The petitioner was penalized with 30 days in disciplinary segregation; disallowance of 27 days' good conduct time; and a disciplinary transfer, evidently to his current facility. He appealed the conviction on several grounds, claiming that the charge was not properly written and insisting, as he does herein, that the original charge, "Escape from an unescorted community center, Code 200," which is written on the incident report, is "totally different" from "Escape from an open institution, Code 200," of which he was convicted. Petitioner Brown argued, on appeal and herein, that he had no notice of the second offense, he would never have pled guilty to escape, and the evidence does not support the conviction.

The BOP's consistent response was that the procedures in Program Statement ("PS") 5270.07, *Inmate Discipline and Special Housing Units*, "were substantially followed, the evidence supports the DHO's finding, and the sanctions were appropriate for the offense." Therefore, the appeal failed at all levels, thus exhausting the administrative remedies available to Brown.

The petitioner now asks this Court to order the restoration of his good conduct time in calculating his sentence.

3

## DISCUSSION

Petitioner Brown claims a due process violation. Accordingly, the Court begins with an examination of the due process required by the U.S. Constitution for prisoners facing disciplinary action, as it has been delineated by the Supreme Court of the United States in a few well-known opinions. A prisoner is entitled to certain due process protections only when he or she is faced with the loss of good conduct time or a penalty which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

Since the penalties challenged herein included the loss of good conduct time, the petitioner was entitled to certain procedures. Therefore, according to the Supreme Court, the following due process procedures must have been provided for him: (1) a 24-hour written notice of the charge; (2) a qualified right to call witnesses; and (3) a written statement by the fact-finder(s) as to the evidence relied on and reasons for the disposition, all as set out in *Wolff v. McDonnell*, 418 U.S. 539, 564-65 (1974).

The Supreme Court has separately ruled on the standard of evidentiary support sufficient to satisfy constitutional due process. Due process requires that a prisoner's good conduct time cannot be forfeited unless there is "some evidence" of his guilt. *Superintendent v. Hill*, 472 U.S. 445 (1985). In that case, the Supreme Court further wrote:

> Assuming that good time credits constitute a protected liberty interest, the revocation of such credits must be supported by some evidence in order to satisfy the minimum requirements of procedural due process . . . . [a]scertaining whether the "some evidence" standard is satisfied does not require examination of the entire record, independent assessment of witnesses' credibility, or weighing of the evidence, but, instead, the relevant question is whether there is any evidence in the record to support the disciplinary board's conclusion.

*Id.* at 454-55.

This Court next sets out its analysis on whether the instant petitioner's disciplinary proceedings complied with these constitutional standards. Taking *Wolff*'s requisites in reverse order, the Court finds that the petitioner's attached DHO report satisfies the requirement that the prisoner be provided a "written statement by the fact-finder(s) as to the evidence relied on and reasons for the disposition." As to the second requisite, the petitioner does not claim to have been denied any desired witnesses, and the record which he provides shows that he told authorities that he desired none.

It is the "24-hour written notice of the charge" which the petitioner claims that he did not receive. The petitioner's incident report shows that he was promptly provided a copy of the incident report charging him with "Escape from an unescorted community center." Petitioner Brown argues, however, that that offense is applicable only to Community Corrections Centers, not his prison camp; the DHO improperly and without notice amended the charge to "Escape from an open institution"; and therefore, "it [was] virtually impossible for the accused to defend himself."

The petitioner cites no factual or legal support for his argument and the Court finds none. In fact, contrary to the petitioner's claims, PS 5270.07 provides the following in Table 3, listing Prohibited Acts, at Code 200: "Escape from unescorted Community Programs and activities and Open Institutions (minimum) and from outside secure institutions – <u>without</u> violence." Thus, it simply is not true that there are two distinct offenses. Even if there were a difference between escape from a community program and escape from an open institution, however, the petitioner does not explain how defending against one would be different from defending against the other.

5

The Court concludes that the petitioner received adequate written notice of the charge against him, consistent with the Due Process Clause of the United States Constitution. Additionally, the Court also finds that there is sufficient evidence to support his conviction. Upon the initial investigation, on April 15, 2005, he admitted, "I was out of bounds. I am guilty." One week later, in testifying before the DHO, he again admitted that he was not in his assigned dorm; but this time claimed to have been "in C-Dorm when they were counting B-Dorm." Yet the officers conducting the searches wrote memoranda supporting a conclusion that the petitioner was not in C-Dorm or on the premises, and the DHO found them more credible than Brown. This is clearly more than "some evidence," and hence the conviction is supported sufficiently.

It must be remembered that, under *Superintendent v. Hill*, judicial review of a prison disciplinary decision does not involve a redetermination of an inmate's innocence or guilt. To the extent a prisoner contends that one person's testimony is more credible that another's, independent assessment of witnesses' credibility is not required. *Superintendent v. Hill*, 472 U.S. at 455. Additionally, the credibility determinations of hearing officers cannot be disturbed. *See Wagner v. Seely*, 915 F.2d 1575, 1576 (7th Cir. 1990) (unpublished), *cert. denied*, 501 U.S. 1219 (1991).

Upon the presentation of a prison disciplinary decision, the role of the federal court is merely to ensure that the prisoner was afforded certain procedures, the action against him is not arbitrary, and the ultimate decision has some evidentiary support. *Superintendent*, 472 U.S. at 457. In the case *sub judice*, this Court finds no error in the disciplinary proceedings as the petitioner has presented them. Nor can the Court conclude that arbitrariness had any role to play. Despite the petitioner's denials, there is "some evidence" of the petitioner's guilt and his petition will be denied.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that the petition of Gregory Lynn Brown for writ of habeas corpus is **DENIED**, *sua sponte*; the action will be **DISMISSED** from the docket of the Court; and Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the respondent.

This 17th day of April, 2006.

_____
HENRY R. WILHOIT, JR.
SENIOR U. S. DISTRICT JUDGE